IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | |
|---|---|
| JOHN SAMPSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action File No._____ |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Defendant. ) | |

## COMPLAINT

**COMES NOW**, Plaintiff named above, and hereby files this Complaint, showing the Court as follows:

## PARTIES, JURISDICTION and VENUE

1. Plaintiff John Sampson ("Mr. Sampson") is a resident of Richmond County, Georgia and was a patient at a Veterans Administration medical facility which treats patients, and brings this action for injuries sustained as a result of negligent medical treatment he received at that facility committed by Defendant, its agents and employees, as set forth below.

2. This is an action arising under the Federal Tort Claims Act, 28 U.S.C. §§ 2671 et seq. This Court is vested with jurisdiction pursuant to 28 U.S.C. § 1346(b).

1

3. Timely and adequate administrative claim notices were sent to and received by the Office of Regional Counsel, Department of Veterans Affairs, regarding the claims made herein. The claims were denied.

4. The pre-suit requirements of 28 U.S.C. §§ 2401 and 2675 have been fulfilled.

5. Mr. Sampson has complied with all conditions precedent to the bringing of this civil action.

6. At all times mentioned, Defendant United States of America ("Defendant"), through the Department of Veterans Affairs, an agency of Defendant, owned and operated the Charlie Norwood Uptown and Downtown Medical Centers (collectively referred to hereinafter as "Augusta VAMC") in Augusta, Georgia.

7. A substantial part of the events or omissions giving rise to this civil action occurred at the Augusta VAMC located in Richmond County, Georgia and Richmond County is in the Augusta Division of the Southern District of Georgia. Venue is proper in this Court pursuant to 28 U.S.C. §1391 (e)(2) and Local Rule 2.1 (e).

8. At all times material hereto, the Veterans Administration had the right to control the time, manner and method of duties performed by the physicians, nurses and other staff, and had the right to discharge the physicians and other staff at this facility.

9. Furthermore, at all times material hereto, the physicians, nurses and other staff at Augusta VAMC who provided medical care to Mr. Sampson were agents and/or employees of the Veterans Administration and were acting within the course and scope of their agencies or employment, such that the negligence of these agents or employees may be imputed to the Veterans Administration pursuant to the doctrine of *respondeat superior* and other principles of agency.

10. Accordingly, the Veterans Administration is liable for the negligent acts and/or omissions committed by its agents and/or employees at Augusta VAMC who provided medical care to patients such as Mr. Sampson pursuant to the doctrine of *respondeat superior* and other principles of agency.

11. Whenever in this Complaint it is alleged that Augusta VAMC did any act or failed to do any act, it is meant that the officers, agents, or employees of the Augusta VAMC respectively performed, participated in, or failed to perform such acts while in the course and scope of their employment or agency relationship with Augusta VAMC.

12. Mr. Sampson was dependent on the staff at the Augusta VAMC for medical and health treatment and care.

13. At all material times, the agents and employees of the Augusta VAMC who treated Mr. Sampson represented that: (a) they were competent to provide Mr. Sampson with the necessary care, treatment, and services and would

provide the same; and (b) that Mr. Sampson's condition was capable of being successfully managed by them.

14.  During Mr. Sampson's treatment at the Augusta VAMC, Mr. Sampson suffered from a pattern of negligent medical care and systemic failures, all which contributed to Mr. Sampson's outcome including but not limited to inadequately trained and inadequately supervised staff and nurses.

15.  The agents and employees entered into a continuing course of negligent conduct, creating, implementing and enforcing unsafe and negligent practices and policies at the Augusta VAMC which deprived patients, including Mr. Sampson, of safe, adequate, and essential care and resources to meet their needs, including, but not limited to, appropriate assessment and continued monitoring of his condition, and appropriate medical treatment and care.

16.  At all material times, the Augusta VAMC had a duty to exercise reasonable care to adequately train and supervise its agents and employees, so as to prevent the outcome such as the one suffered by Mr. Sampson.

17.  At all material times, the Augusta VAMC had a duty to exercise reasonable care to create and implement policies, directives, procedures, protocols and guidelines, so as to prevent the outcome such as the one suffered by Mr. Sampson.

18.  The Defendant, its agents and employees, had a duty to obtain a full

and complete history, fully evaluate Mr. Sampson and to take appropriate measures to care for Mr. Sampson and to prevent an avoidable outcome such as the one suffered by Mr. Sampson.

19. The Augusta VAMC had a duty to exercise the applicable degree of care and skill in the treatment of its patient Mr. Sampson.

20. The Augusta VAMC had duties to exercise reasonable care in providing medical treatment to its patient, Mr. Sampson.

21. The Augusta VAMC and its employees and agents had a duty to exercise that degree of care, skill and diligence generally exercised by members of their profession under the same or similar circumstances in the treatment of its patient, Mr. Sampson.

22. In its care and treatment of Mr. Sampson, the Augusta VAMC failed to exercise that degree of care, skill and diligence generally exercised by members of their profession under the same or similar circumstances.

Facts

(a) On 8-22-2018, an Augusta VAMC medical records record John Sampson receiving treatment at the Augusta VAMC with the initial complaint charted as: 60 year old African American man with a primary diagnoses of constipation, who had numerous co-morbidities and who had been on Lortab chronically, and takes stool softeners which usually are effective, but recently had

not been. The following facts ("b –i") are taken from Augusta VAMC records for 8/22/2018.

(b) On 8/22/2018, Mr. Sampson complained, "It will get right to the edge of my butt then it's hard and will not come out." Mr. Sampson's chief complaint was noted as not having a bowel movement for 3-4 days.

(c) On 8/22/2018, a nursing note by Registered Nurse Jacob Wodarz noted that an enema was administered to Mr. Sampson at 11:30, hard stool in rectum, enema difficult to insert, patient reports that procedure was painful, no blood noted.

(d) On 8/22/2018 at 11:45 an MD was in Sampson's room to digitally un-impact patient, per MD, frank, blood in stool.

(e) On 8/22/2018 at 12:50 scant blood on gauze placed on rectum. Fresh gauze placed, no bleeding noted at this time.

(f) On 8/22/2018 at 13:25 discharge vitals taken. Approx. dime sized blood on gauze. Gauze changed.

(g) Findings on examination at Augusta VAMC included a laceration "tracking along the natal cleft from just posterior to the anal verge up to 2-3 cm." A dime size amount of blood on gauze placed on Mr. Sampson's rectum was noted prior to discharge. He was observed for two hours to make sure that the bleeding stopped and discharged home the afternoon of August 22, 2018. Mr. Sampson's

diagnosis at discharge was constipation and rectal laceration. He was instructed to return to the emergency room if he experienced recurrence of rectal bleeding.

(h) Mr. Sampson was discharged from the Augusta VAMC with a diagnosis of laceration to rectum with a plan to take bisacodyl suppository and magnesium citrate as prescribed. If develop worsening rectal bleeding, return to the emergency department for further evaluation and management with discharge instructions having been provided by Dr. Herzog and electronically signed by JACOB WODARZ REGISTERED NURSE Signed: 08/22/2018 13:27.

(i) An additional Augusta VAMC note from 13:13:52 indicated that hpi is PMHx significant for chronic opiate and NSAID use for chronic pain syndrome s/p b/1 hip replacements and scattered erosions in the cecum and ascending colon on colonoscopy (12/6/17). Presents with constipation for the last 3 days. Denies any fever, chills, sweats, abdominal pain, nausea, vomiting, or diarrhea. Uses docusate sodium 100mg BID at home for opiate-induced constipation. XR of abdomen (8/22/18) reveals heavy stool burden with non-specific, non-obstructed bowel gas pattern. Administration of Fleet enema was complicated by rectal laceration with acute blood loss. Hgb stable at 15.1. Consulted General Surgery who evaluated the patient and recommended discharge with laxatives as needed and return to the ED if rectal bleed does not resolve. Rest of ROS is negative except for symptoms mentioned above in the HPI. "I saw and examined the patient in the ER with the

resident. 60 yr old with several day history of no bowel function/constipation. In ER, ER staff ordered enema. States that at time of enema, enema was extremely painful, he was screaming and felt something tear. Post-enema, had bleeding and surgery called. On my exam, pt with 1 cm laceration in soft tissue superior to anus (not involving anal margin or canal). Hemeostatis controlled with gauze and pressure. No indication for surgical intervention at this time. Will allow traumatic wound to heal by secondary intention given location. Mr. Sampson was provided with an "Impression: Nonspecific, non-obstructed bowel gas pattern. Assessment: 60 yo male with a bleeding natal cleft after a fleet enema was attempted. Recommendations: patient likely has a complication from vigorous attempt to introduce the enema into his anal canal. Dry dressing was applied and the patient was placed under observation for 2 hours to confirm that the bleeding stopped. To be discharged in case patient is stable with the following recs.: Continue daily dressing with dry gauzes and adhesive tape. He was discharged with laxatives as needed and directed to return to the emergency department in the recurrence of rectal bleed.

  (j) On August 22, 2018, Mr. Sampson presented to the emergency room at AU HEALTH and reported that he suffered a rectal laceration during the course of an enema performed at the Augusta VAMC earlier that day. Additionally, he reported rectal bleeding and abdominal pain.

(k) Mr. Sampson presented to the emergency room at AU HEALTH around 20:05 on August 22, 2018. He reported that he suffered a laceration during the enema at the Augusta VAMC and complained of recurrence of rectal bleeding and abdominal pain. His WBC was elevated (14.7 thous/mrn3) and he was tachycardic. Findings on rectal exam included "tear to 3 o'clock position and 12 o'clock position." Findings on a CT of Mr. Sampson's abdomen and pelvis included mild wall thickening and inflammatory change at the distal sigmoid colon extending to the anus, submucosal gas at the anal verge that indicated a mucosal tear, and trace inflammatory changes with trace reactive fluid in the bilateral retroperitoneal/paracolic gutters. These findings are compatible with a mucosal tear with submucosal gas. There was no intraperitoneal or retroperitoneal free air.

(l) The initial impression at AU Health of Mr. Sampson's condition was "possible rectal laceration [versus] perforation [secondary] to traumatic enema." The plan was to treat the injury conservatively. Treatment during the course of the admission primarily consisted of observation, catheterization for urinary retention, I. V. antibiotics (Rocephin and Flagyl), I. V. and oral pain medication (hydromorphone and hydrocodone), laxatives and stool softeners, and serial x-rays. Internal examination of Mr. Sampson's rectum was deferred due to concern that "instrumenting his rectum may worsen his injury."

(m) Findings from a rectal examination and computed tomography ("CT") performed on Mr. Sampson at AU HEALTH on August 22, 2018, confirmed that he suffered a deep rectal tear and infection of surrounding tissue.

(n) Mr. Sampson was admitted at AU Health from August 23 through 26, 2018 for rectal tear and infection.

(o) On August 31, 2018, Mr. Sampson returned to the emergency room at AU HEALTH and reported symptoms including rectal bleeding, weakness, pain with sitting, cold sweats, and intermittent confusion and a CT was performed.

(p) Mr. Sampson presented to the emergency room at the Augusta VAMC on September 7, 2018 with complaints of pain and rectal bleeding. He was admitted and diagnosed with a perirectal abscess.

(q) Mr. Sampson presented to the emergency room at the Augusta VAMC on September 7, 2018 with complaints of pain and rectal bleeding. He was admitted. A CT showed a perirectal abscess. A general surgeon named Dr. David Rivera and a resident examined Mr. Sampson. Their findings on examination included a "large opening to the right of the anus" that drained purulent fluid mixed with feces and an opening to the left of the anus "also draining." Mr. Sampson was started on IV antibiotics.

(r) Mr. Sampson underwent an examination under anesthesia with irrigation and debridement of necrotic tissue at the Augusta VAMC on September

8, 2018. He subsequently required a diverting colostomy and additional irrigation and debridement procedures.

(s) Mr. Sampson's diverting colostomy is permanent due to the extent of necrosis and damage to tissue and muscle from the rectal tear and progressive surrounding infection.

### Negligence, Proximate Cause and Damages

23. The agents and employees including but not limited to nurse J. Wodarz of the Augusta VAMC who treated Mr. Sampson were negligent in each of the following manners which directly contributed to and caused injury and resulting complications and infections to Mr. Sampson and directly caused or contributed to Mr. Sampson losing his anus to infection and requiring him to defecate by ostomy for the remainder of his life.

24. Augusta VAMC while acting through its agents and employees, violated the standard of care and skill exercised by medical care providers generally under similar conditions and like surrounding circumstances such as those presented by Mr. Sampson in their care and treatment of him. Their professional negligence includes, but is not limited to, the following:

    a) Used too much force in the administration of the enema by vigorously forcing the enema when the standard of care requires a gentle application of pressure;

b) Used too much force in the administration of the enema by vigorously forcing the enema after and while the patient continued to voice complaints of pain;

c) Administered an enema when safer alternatives existed such as administering oral laxatives and the use of a suppository laxative prior to the use of an enema;

d) Failed to take an appropriate medical history as the history does not establish Mr. Sampson's recent food and liquid intake;

e) Failed to take an appropriate medical history as the history does not establish when Mr. Sampson last took an oral laxative;

f) Failed to properly record the administration of the enema to John Sampson on 8/22/2018 as the medical records do not indicate whether or what type of lubricant was used nor the amount of force used in the administration of the enema;

g) Negligently caused a rectal tear in or at Mr. Sampson's rectum or anus;

h) Failed to promptly notify and communicate with a physician on Sampson's change in condition during the administration of the enema as a physician should have been contacted immediately when Mr. Sampson voiced a complaint of pain or discomfort, for Sampson's condition to be re-assessed on 8/22/2018;

i) Failure to provide staff with the knowledge, skills, and competencies to properly care for Mr. Sampson.

25. As a direct and proximate result of the violations of the standard of care and negligent conduct by Augusta VAMC described above, Mr. Sampson suffered damages recoverable by him in an amount to be determined at trial.

26. Mr. Sampson suffered and continues to suffer serious injuries including past, present, and future physical pain and suffering; past, present, and future mental and emotional pain and suffering; and inability to earn wages as a direct and proximate result of the negligence of the Augusta VAMC and its agents and/or employees.

27. As a direct and proximate result of Defendant's violations of the standard of care and negligent conduct as described above, Mr. Sampson has suffered past and future physical and mental pain and suffering, past and future medical expenses, permanent disfigurement, a loss in the ability to earn money from work.

28. Augusta VAMC, and while acting through its agents and employees, violated the standard of care and skill exercised by medical care providers generally under similar conditions and like surrounding circumstances such as those presented by Mr. Sampson in their care and treatment of him. Their professional negligence includes, but is not limited to, the following:

*Systematic Failures*

    A)    Failure to provide staff with the knowledge, skills, and competencies to properly care for patients such as Mr. Sampson.

    B)    Failed to create and implement policies, directives, procedures, protocols and guidelines, so as to prevent an outcome such as the one suffered by Mr. Sampson.

## **PROFESSIONAL NEGLIGENCE**

29.    Plaintiff incorporates paragraphs 1 through 28 above as though set forth fully *verbatim* herein.

30.    To the extent an affidavit pursuant to O.C.G.A. § 9-11-9.1 is required, Plaintiff has attached as Exhibit "l" the Affidavit of nurse Ellen Lewis who is qualified as an expert on the issues raised in this Complaint. This affidavit specifies at least one negligent act or omission by Defendant. The attached affidavit is not inclusive of each act, error or omission that has been committed, or may have been committed, by Defendant, and Plaintiff reserves the right to contend and prove additional acts, errors and omissions on the part of Defendant that reflect a departure from the requisite standard of care.

31.    The care and treatment rendered to Mr. Sampson by Defendant's employees and/or agents as described herein and in the affidavit, attached hereto as

Exhibit 1, fell below that degree of skill and care ordinarily employed by nurses and medical providers generally under similar conditions and like circumstances, constituted negligence, and caused and contributed to Mr. Sampson's rectal injury, infection at or around the rectal injury location, surgeries, ostomy, and hernias.

32. The affidavit of Ellen Lewis is attached hereto as Exhibit 1 and pursuant to O.C.G.A. § 9-11-9.1 is incorporated herein by reference.

33. As a direct and proximate result of the violations of the standard of care by the Defendant, Plaintiff John Sampson suffered and will continue to suffer physical and mental pain and suffering, suffered temporary total disability for various periods of time, suffered permanent disfigurement and scarring and has incurred substantial medical expenses.

34, The Defendant is liable to John Sampson for his excruciating physical and mental pain and suffering and medical expenses.

## **ORDINARY NEGLIGENCE**

35. Plaintiff incorporates paragraphs 1 through 34 above as though set forth fully herein *verbatim*.

36. Defendant had a duty to exercise ordinary and reasonable care in their provision of services to Sampson.

37. Defendant failed to exercise ordinary and reasonable care in the provision of services to John Sampson as set forth below.

38. Defendant failed to exercise ordinary and reasonable care in the following particulars:

    a)    Improperly and incompletely took and/or recorded Sampson's medical history;

    b)    Improperly and incompletely charted entries;

    c)    Failed to properly request, receive and communicate the patient's status;

    d)    In such manners as proven at trial.

39. The acts, omissions and ordinary negligence of Defendant and its agents and employees resulted in significant and inadequate care and injuries to Plaintiff.

40. As a result of the ordinary negligence committed by the Defendant, the Defendant are liable to Plaintiff John Sampson for damages as provided by Georgia Law and proven at trial including his excruciating, past and future physical and mental pain and suffering, permanent disfigurement as well as past and future medical expenses.

WHEREFORE, Plaintiff prays for the following relief:

    (a)    That process be issued as to the Defendants;

(b) That John Sampson recover judgment against the Defendant in an amount in excess of $10,000.00 and as shown by the evidence at the trial of this case;

(c) That Plaintiff recover attorney fees and costs of litigation from the Defendant in any amounts determined compensable by the Court;

(d) That the Court grant such other and further relief as they may deem just and proper; and

(e) That Plaintiff be granted a trial by the Court without a jury.

This 23rd day of March, 2023.

/s/   George Bush
George Bush, Esq.
Attorney for Plaintiff
Georgia Bar No. 098442
South Carolina Bar No. 75215

GEORGE BUSH LAW, PC
2603 Commons Blvd., Suite A
Augusta, Georgia 30909
Telephone:  (706) 722-1200
Facsimile:   (706) 869-3160
Email:  george@georgebushlaw.com